## PORTER *vs.* WILLIAMS.

1. The action of the Circuit Court on matters relating to the taxation of costs may be revised on error, except in certain cases of appeal in which the Circuit Court is invested with discretionary power under the act of 1824.

2. When a party, whether ignorantly or oppressively, summons witnesses in a cause which is not at issue, or is not for trial at the term to which the subpœna is returnable, he will be taxed with the costs of their attendance; and the advice of counsel cannot protect him.

3. When a party summons witnesses to sustain his character, after he has been notified by the counsel for the opposite party that no attempt will be made to impeach it, and such witnesses are not examined on the trial, the party by whom they were summoned will be taxed with the costs of their attendance, although he acted under the advice of counsel.

ERROR to the Circuit Court of Talladega.
Tried before the Hon. EZEKIEL PICKENS.

This case originated before a justice of the peace, and was brought to the Circuit Court by writ of *certiorari*. From the bill of exceptions it appears, that Williams sued Porter before the justice, for a sum which is not stated; that the justice gave judgment for the latter, when Williams, during term time of the Circuit Court in April, 1851, applied for and obtained a writ of *certiorari* from the judge of said court, returnable to the November term of that year, when a trial was had, which resulted in favor of the plaintiff. On this trial, but one witness was examined in behalf of Williams. It further appears, that he had caused seventeen witnesses to be summoned in his behalf, at the April term, 1851, and nineteen at the November term, 1851, all of whom proved their attendance, and claimed their fees. *It also appears, that after the trial in the Circuit Court, Porter moved the court to tax the plaintiff (Williams) with the costs of such witnesses as had been summoned by him, but were not sworn on the trial.*

On this motion it was shown, that the writ of *certiorari* was returnable to the Fall term, 1851, of the court, and that Porter had no notice that it had been applied for and obtained, until after the April term for that year. Williams, being sworn, stated, that he understood, but not from Porter, that his character was to be attacked, and that he summoned these witnesses to sustain it; that it was not with a view of merely increasing cost, and that he had them summoned under the advice of counsel.

Porter then proved, that notice had been given the plaintiff's counsel, before the sitting of said court, and before the appeal was taken, but after the cause had been decided by the justice against Williams, that no effort would be made to impeach his testimony.

Upon this evidence, Porter moved the court as above stated; but his motion was overruled, and he excepted.

The refusal of the court to tax the costs according to the motion of the plaintiff in error, is the only error assigned.

L. E. PARSONS, for plaintiff in error.

LIGON, J.—Since the cases of Smith v. Donelson, 3 S. & P. 393, and Randolph v. Perry, 2 Por. 376, no doubt seems

to have been entertained of the power of this court to revise on érror the action of the Circuit Courts, on matters relating to taxation of costs. The only exception to this rule is found in cases arising under the act of 1824, regulating the taxation of costs in certain cases of appeal from justices of the peace, in which the Circuit Courts are vested with discretionary power to impose the costs on either party ; and in such cases, the exercise of that discretion cannot be reviewed. Beason v. Riddle, 11 Ala. 743.

This case does not come within the exception; and consequently, the decision·of the court below on the motion of the plaintiff in error is a proper subject of revision in this court.

In Brily v. Hodges, 3 Por. 335, it was held, that the costs of witnesses who are summoned, but not sworn, may be taxed against the unsuccessful party, if it appears by affidavit, or otherwise, that they were summoned to prove material facts, and not for oppression. But, we apprehend, it was never intended to make the affidavit of the party summoning such unexamined witnesses conclusive of the purpose for which they were summoned. It is clearly competent for the opposite party to controvert it, and show, if he can, that it is untrue. This may well be done by establishing the existence of a state of facts which will show that it was wholly unnecessary to have summoned such witnesses at all, inasmuch as the party who brings them into court had been notified, that the point to which their testimony was intended to be directed would not be made in the case. From the bill of exceptions, such appears to have been one aspect of this case in the court below.

It is also shown, that at a term of that court before the case was placed on the docket, and before it could lawfully have been placed there, the plaintiff (Williams) caused seventeen witnesses to be summoned, who attended at that term. This was wholly irregular, and the cost arising upon the attendance of these witnesses should never have been taxed against the defendant. There was no case then pending and at issue, in which they could possibly have been examined; and it is an abuse of the process of subpœna, to sue it out in a case which is not at issue, or which is not for trial at the term to which

such subpœna is returnable. And the party who thus igno-
rantly or oppressively uses it in such cases, must pay the cost
of it; and the advice of counsel cannot protect him.

The proof on the motion also shows, that Williams' attor-
neys had been distinctly notified, that no attempt would be
made to impeach his veracity, should a trial take place in the
Circuit Court; and this, before he had taken the steps neces-
sary to carry the case into that court. In his own affidavit
on this motion, he does not say that he had heard from Por-
ter himself, or from any person who had heard the latter say
anything upon the subject, that an attempt would be made
on the trial in the Circuit Court to impeach his veracity; on
the contrary, he swears that he never did understand from
Porter that such attempt would be made.

While it is admitted, that, when a matter collateral to the
issue involved becomes important, as where the credit of a
witness is impeached, the party for whom he testifies will be
allowed to sustain his credit, by producing an equal or greater
number of witnesses than are brought to impeach him; yet,
before these witnesses are summoned, the party must know,
or have good reason to believe, from the words or acts of his
adversary, or his counsel, that the credit of his witness will
be assailed; otherwise, he should be charged with all cost of
the witnesses who are summoned by him, and who are neither
needed, sworn nor examined. Vague rumors will not justify
the summoning of nineteen witnesses, when the result shows
that but one is needed. Neither can such oppression be jus-
tified, by saying that it was done under the advice of counsel.
We all know how easily, and commonly, counsel are misled
by the artful and uncandid, not to say false, statements made
to them by their clients, who, desiring particular advice,
shape their communications in such a manner as to be certain
to obtain it.

We do not think the defendant in error was justified, under
the facts shown on the motion, in summoning any witnesses
to the April term, 1851, of the Circuit Court, and consequent-
ly the cost of all witnesses summoned by him to that term
must be taxed against him. And, as he summoned nineteen
witnesses to the trial term of the court, and only examined
one, and from the showing made, had no reason to apprehend

that he would have any necessity to use the others, he must pay the costs of eighteen of them.

The judgment of the court below must be reversed, and the clerk of that court must re-tax the cost of the case, according to the rules laid down in this opinion.